(C. D. 92)

C. J. TOWER & SONS v. UNITED STATES

United States Customs Court, Second Division

(Decided February 6, 1939)

*Stanley Williamson* for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Buffalo, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of flashlight cases. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at but 35 per centum ad valorem under paragraph 353 of said act, which reads as follows:

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

A sample of the imported flashlight cases is in evidence as Exhibit 1. It is a metal case equipped with lens, bulb, and wiring, apparently ready to receive the electric battery to make it immediately available for use as a complete electric flashlight. Also admitted in evidence as Illustrative Exhibits A to G, inclusive, are pictorial representations of certain articles constructed and designed for producing, rectifying, modifying, controlling, and distributing electrical energy.

In addition to said exhibits the plaintiffs offered in evidence the testimony of Duane L. Tower of C. J. Tower & Sons, the plaintiffs herein, who identified the exhibits.

The defendant offered in evidence the testimony of two witnesses. The first, Arthur T. Hinckley, a consulting electrochemist in the employ of the National Carbon Co., testified that the production of electrical energy is dependent on any one of three conditions, the moving of a wire through an electric or magnetic field, by friction, or by the conversion of chemical energy; that the two generators shown on the photograph admitted in evidence as Illustrative Exhibit A are examples of articles producing electrical energy; that the term "rectifying" electrical energy means to convert from alternating to a direct current; that the two articles shown on Illustrative Exhibit B are electrical rectifiers; that an article like Exhibit 1 is not capable of rectifying or modifying electrical energy; that Collective Exhibit C shows photographs of articles capable of modifying electrical energy; that Exhibit 1 is incapable of controlling electrical energy; that Illustrative Exhibit D depicts two articles that are capable of controlling electrical energy known as drum controllers; that Exhibit 1 is not an article for distributing electrical energy but that articles depicted in Illustrative Exhibit E are articles capable of distributing electrical energy; that Exhibit 1 is not similar to an electric motor, electric fan, electric locomotive, electric portable tool, electric furnace, electric heater, electric ovens, electric range, electric washing machine, electric refrigerator, or electric sign.

On cross-examination the witness Hinckley testified that when a flashlight like Exhibit 1 is turned on with a switch current it is not controlled but simply a contact is made enabling the current to flow; that there is no electrical device in Exhibit 1 but simply a contact member that operates as a primary battery dry cell; that when one plugs in a radio the radio is run by the tubes which convert the current from alternating to direct; that the flashlight does not convert the current; that a flashlight does not contain an electrical element until it has a battery inside of it; that a device operated by electricity would be an electrical device; and that in a flashlight it is the passage of the current in the battery from the filament of the bulb that produces the light.

The second witness called by the defendant, Richard M. Eaton, a manufacturer and formerly engineer in the employ of the American Telephone & Telegraph Co., testified that he was familiar with articles suitable for producing, rectifying, modifying, controlling, and distributing electrical energy, and that Exhibit 1 is not such an article.

On the established facts it would appear that the imported flashlight cases are not parts of articles which produce, rectify, modify, control, or distribute electrical energy and, therefore, would not be classifiable under the first clause of said paragraph 353 as articles which perform those functions. It is true that they were so classified under said clause in our decisions in *Guth Stern & Co., Inc.* v. *United States*, Abstract 23500 and Abstract 23621, 63 Treas. Dec. 1390 and 1416, respectively; *S. S. Kresge & Co.* v. *United States*, Abstract 24320, 63 Treas. Dec. 1569; *May Co.* v. *United States*, Abstract 27305, 65 Treas. Dec. 1360; and *James McCreery & Co. et al.* v. *United States*, Abstract 30312, 67 Treas. Dec. 1157.

In all of said cases, however, it was stipulated by and between counsel for the respective parties that the merchandise involved therein "consists of electric flashlight lamps containing electric light bulbs and the necessary electric device to modify the electrical energy produced by dry batteries into an electric light or flash." No such stipulation was made herein, nor was the record in any of the cited cases incorporated by consent or otherwise.

Therefore, this case must be decided upon the evidence here submitted, which, as before stated, shows that these flashlight cases are not parts of any of the articles mentioned in the first clause of said paragraph 353, especially as the proof establishes that the articles do not modify electrical energy, as was stipulated in the prior cases.

But we are by no means satisfied that they are excluded from said paragraph 353. Unquestionably, the articles, which are in chief value of metal, are parts of electric flashlights which latter are in turn articles having as an essential feature an electrical element or device. Even in their imported condition as unfinished and incomplete, the flashlight cases contain electric wiring, switches, and electric-light bulbs. In this connection, the following testimony on pages 18 to 20 of the record is illuminating:

Judge BROWN. That primary battery that operates Exhibit 1 produces a current of electricity that makes the light?
The WITNESS. Yes, sir; but this is merely a container, only.
Judge BROWN. The battery doesn't come with it, you mean?
The WITNESS. The battery doesn't come with it.
Judge BROWN. It can't be used without the battery, can it?
The WITNESS. This can't be used as a flashlight, no.
Judge BROWN. That is the only purpose of the thing—to be a flashlight?
The WITNESS. That is the only purpose.

Judge BROWN. Now, electricity produced by that battery when it is put in Exhibit 1, is an electricity produced by chemical energy?

The WITNESS. Yes, sir.

Judge BROWN. You enumerated three kinds of electricity—moving a wire in an electrical field, friction electricity, and electricity produced by chemical energy—and this is the third?

The WITNESS. This is the third.

Judge BROWN. Isn't that an electrical device, then?

The WITNESS. I don't think so. The case is not an electrical device. The electrical energy produced in the dry cell, passing through the filament of the bulb makes the light.

Judge BROWN. Wouldn't you call that an electrical element?

The WITNESS. I wouldn't consider the case an electrical element, no, sir, as imported, and which we are discussing.

Judge BROWN. It wouldn't be an electrical element until it has the battery inside of it?

The WITNESS. That is right.

Judge BROWN. After it got the battery inside of it then it would be an electrical device?

The WITNESS. Certainly. The combination is an electrical device.

Judge BROWN. And it would also contain an electrical element?

The WITNESS. That is a' constituent part of an electrical device.

Judge BROWN. That is the only way that it can be used?

The WITNESS. That is the only way that it can be used.

The WITNESS. That is the only way that it can be used—to give light.

Upon the entire record we hold as a matter of law that the imported flashlight cases, being parts in chief value of metal of articles having as an essential feature an electrical element or device, are properly dutiable as such at the rate of 35 per centum ad valorem under said paragraph 353. That claim of the plaintiffs is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.